IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

PAUL RICHARD SPURLOCK AND
KATHY ROBIN SPURLOCK,

           Debtors,

PAUL RICHARD SPURLOCK AND
KATHY ROBIN SPURLOCK,

           Plaintiffs,

v.                                    CIVIL ACTION NO. 3:10-mc-0054

PHH MORTGAGE CORPORATION AND
FEDERAL NATIONAL MORTGAGE
ASSOCIATION

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant PHH Mortgage Corporation's (hereinafter PHH) Motion to Withdraw Reference of this Adversary Proceeding. [Doc. No. 1]. Debtors and Plaintiffs Paul and Kathy Spurlock (hereinafter Plaintiffs) oppose the motion. For the following reasons, the Court **GRANTS** the motion and **DIRECTS** the Clerk of this Court to open a new civil action for the Adversary Proceeding. Upon being docketed, the Court also **DENIES without prejudice** Defendant PHH's motions to dismiss that were pending in the Adversary Proceeding. If it so desires, PHH may refile those motions in the new civil action.

**I.**
**FACTUAL AND PROCEDURAL HISTORY**

On November 17, 2006, Mr. Spurlock purchased a house in Huntington, West Virginia. Mr. Spurlock financed the house by executing a Deed of Trust in favor of PHH in the

amount of $149,600, and a second Deed of Trust in the amount of $28,000. It appears that at some point, the Trustee determined Mr. Spurlock was in default on the loan and, therefore, PHH notified Plaintiffs by certified letter in or about April of 2009 that the Trustee would sell the house on May 7, 2009. Mr. Sprulock asserts he contacted PHH to work out a payment plan, and PHH agreed to cancel the sale.

Plaintiffs state they received no further communication from Defendants regarding a foreclosure. Plaintiffs assert that PHH nevertheless foreclosed on the house on September 30, 2009, and sold it to Defendant Federal National Mortgage Association (commonly known as Fannie Mae). Plaintiff state they had no notice the house was sold until on or about October 9, 2009, when they received a "Notice to Vacate" from Fannie Mae's legal representative. Defendants dispute these allegations and contend that Plaintiffs were given notice of the sale, and notice was published in the newspaper.

Plaintiffs obtained counsel and, on December 11, 2009, they filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the Southern District of West Virginia. [Case No.: 3:09-bk-30974]. Thereafter, on December 30, 2009, Plaintiffs filed an adversary proceeding against Defendants. [A.P. No.: 3:09-ap-03044]. In their adversary Complaint, Plaintiffs allege six causes of action: (1) failure to comply with West Virginia statutory foreclosure provisions and violations of Plaintiffs' due process rights under both the United States and West Virginia Constitutions; (2) violations of the West Virginia Consumer Credit and Protection Act in failing to provide specific and conspicuous language as to a "Balloon Rider" provision attached to

the second Deed of Trust; (3) breach of contract; (4) breach of a duty of good faith and fair dealing; (5) intentional misrepresentation; and (6) negligent misrepresentation. In their Prayer for Relief, Plaintiffs seek the foreclosure sale to be set aside, their home mortgage loans be reinstated as part of the plan filed in the Chapter 13 bankruptcy, a modification of those loans, an award of damages for violations of West Virginia's Consumer Credit and Protection Act, and fees and costs.

PHH filed two motions to dismiss certain claims in the Adversary Proceeding. Those motions were set for hearing before the bankruptcy court on April 30, 2010. Two days prior to the hearing, PHH filed a motion to withdraw the reference for the adversary proceeding from the bankruptcy court and transfer it to this Court for further proceedings. Plaintiffs oppose the motion and argue the adversary proceeding is a core proceeding and is best left in the bankruptcy court. Upon consideration of the issues, the Court agrees with PHH.

## II.
## DISCUSSION

Although this Court has original jurisdiction over all cases arising under title 11 of the Bankruptcy Code, all such cases are automatically referred to non-Article III bankruptcy judges pursuant to 28 U.S.C. § 157(a) and Local Rule of Civil Procedure 83.13.[1] Pursuant to 28 U.S.C. § 157(d), however, a "district court may withdraw, in whole or in part, any case or proceeding

---

[1] Section 157(a) states: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). Local Rule 83.13 automatically refers such cases by providing that "all proceedings arising under Title 11 or arising in or related to a case under Title 11, are referred to the Bankruptcy Court for disposition." L.R. Civ. P. 83.13, in part.

referred under this section . . . on timely motion of any party, for cause shown." 28 U.S.C. § 157(d), in part.[2] While there is not a statutory definition of "cause," courts have considered a number of factors in determining whether such cause exists. These factors include: "(1) whether the proceeding is core or non-core; (2) the uniform administration of bankruptcy law; (3) promoting judicial economy; (4) the efficient use of the parties' resources; (5) the reduction of forum shopping; and (6) the preservation of the right to a jury trial." *Point Serv. Corp. v. Pritchard Min. Co.*, Misc. No. 3:09-0145, Civ. Act. Nos. 2:09-0769, 3:10-0373, Nos. 3:09-ap-03006, 3:09-bk-30018, 2010 WL 1410673, *5 (S.D. W. Va. Mar. 31, 2010) (Faber, J.) (internal quotation marks omitted; quoting *Dwyer v. First National Bank*, No. 5:08-cv-01269, 5:08-mc-00058, 2009 U.S. Dist. LEXIS 42819, at *9 (S.D. W. Va. May 19, 2009) (Johnston, J.) (quoting *Allen v. Nat'l City Mortg. Co.*, 2:04-mc-188, 2006 U.S. Dist. LEXIS 94819, at *4 (S.D. W. Va. July 13, 2006) (Goodwin, J.)). The most important of these factors is the first one "since it is upon this issue that questions of efficiency and uniformity will turn." *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (4th Cir. 1993); *see Alfonseca-Baez v. Doral Fin. Corp.*, 376 B.R. 70, 75 (D. P.R. 2007) (explaining it would be judicially inefficient for a district court to withdraw a core matter when the bankruptcy court generally is already familiar with the facts and issues).

In considering this first factor, the Court recognizes that "[a] core proceeding is one that 'invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.'" *In re Corp. de Serv. Medico Hosp. de Fajardo*, 227

---

[2]There also is a mandatory withdrawal clause in § 157(d), but PHH does not invoke that provision in this case.

B.R. 763, 766 (D. P.R. 1998) (quoting *Diamond Mortg. Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1239 (7th Cir. 1990). Although not exclusive, § 157(b)(2) sets forth examples of what constitutes core proceedings as including:

> **(A)** matters concerning the administration of the estate;
> **(B)** allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
> **(C)** counterclaims by the estate against persons filing claims against the estate;
> **(D)** orders in respect to obtaining credit;
> **(E)** orders to turn over property of the estate;
> **(F)** proceedings to determine, avoid, or recover preferences;
> **(G)** motions to terminate, annul, or modify the automatic stay;
> **(H)** proceedings to determine, avoid, or recover fraudulent conveyances;
> **(I)** determinations as to the dischargeability of particular debts;
> **(J)** objections to discharges;
> **(K)** determinations of the validity, extent, or priority of liens;
> **(L)** confirmations of plans;
> **(M)** orders approving the use or lease of property, including the use of cash collateral;
> **(N)** orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
> **(O)** other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

      **(P)** recognition of foreign proceedings and
other matters under chapter 15 of title 11.

28 U.S.C. § 157(b)(2). Plaintiffs argues that because the subject home is part of the putative estate and the foreclosure action has the potential to impact the liquidation of assets of the estate or the adjustments of the debtor-creditor or equity security holder relationship, their claims fall within § 157(b)(2)(A), (B), and (O). However, the Court disagrees.

   Mortgage foreclosures involve issues of state law and, with limited exceptions in light of specific factual patterns, courts consistently have held that mortgage foreclosures are non-core proceedings because they do not arise under or invoke substantive rights under title 11. Instead, foreclosure cases ordinarily are ones which merely are related to a bankruptcy case. *See In re JJF Assoc. LLC*, No. 01 CIV 2624(DC), 2001 WL 1512616, *2 (S.D. N.Y. Nov. 28, 2001) (stating "[m]ortgage foreclosures are non-core proceedings, and . . . [debtor's] application for permission to satisfy its mortgage involved issues of state law that, absent the bankruptcy petition, would have proceeded in state court"); *In re Tornheim*, 181 B.R. 161, 170-71 (S.D. N.Y. 1995) (stating "[m]ortgage foreclosures are non-core proceedings" and noting that they often involve third parties); *Prairie State Bank v. Allison*, 72 B.R. 476, 478 (D. Kan. 1987) (finding a foreclosure action does not fall within any of the categories listed in § 157(b)(2)). Those cases which find a core proceeding exists typically involve very specific fact patterns which cause the action to arise under title 11. *See, e.g., Alfonseca-Baez*, 376 B.R. at 73-74 (finding core proceeding where adversary proceeding is brought by debtor to challenge mortgage holder's proof of claim); *In re McFadyen*, 145 B.R. 657, 660-61 (E.D. Cal. 1992) (holding that, in an abstention context, a core proceeding exists where

defendants' counterclaim for a set-off for unpaid rent against a note payment in a foreclosure situation would not exist absent the bankruptcy code).

In support of their position that this action involves a core proceeding, Plaintiffs cite *In re Cassidy Land and Cattle Co.*, 836 F.2d 1130 (8th Cir. 1988). However, the Court finds this case is distinguishable from the Eighth Circuit's decision. *In re Cassidy Land and Cattle Co.* involved an adversary proceeding that was brought by the trustee for the debtor seeking to foreclose upon a defaulted note, secured by a mortgage, held by the bankrupt estate. 836 F.2d at 1132. The court found that the foreclosure amounted to a turnover proceeding of a matured debt to the estate within the meaning of the bankruptcy code. *Id.* at 1133. As a turnover proceeding is expressly defined as a core proceeding under § 157(b)(2)(E), the court found the bankruptcy court had jurisdiction to carrying out the foreclosure proceedings. *Id.* In doing so, the court specifically distinguished this situation from the typical foreclosure in which the foreclosure is brought against debtor. *Id.*

In this case, the Court is confronted with a typical foreclosure situation as distinguished from the Eighth Circuit's opinion in *In re Cassidy Land and Cattle Co.* Indeed, the foreclosure process here was finished nearly three months before the Adversary Proceeding was even brought by Plaintiffs. Although Plaintiffs now challenge that foreclosure process, their claims are almost exclusively state law claims[3] and there is nothing unique about the claims or facts which

---

[3]Plaintiffs also make a federal due process claim.

make this action arise under or invoke substantive rights under title 11. Thus, the Court concludes that the Adversary Proceeding brought by Plaintiffs is a non-core proceeding.

Turning next to the other factors relied upon in deciding whether "cause" under § 157(d) is shown, the Court finds that withdrawing the reference will not negatively impact the uniform administration of bankruptcy law, nor will it waste the parties' resources. In fact, pursuant to § 157(c)(1), a bankruptcy judge who hears a non-core proceeding must "submit proposed findings of fact and conclusions of law to the district court," subject to de novo review.[4] Granting the withdrawal of the reference promotes judicial economy because it cuts out this process. Moreover, Plaintiffs specifically have requested a jury trial on their claims. Although a jury trial before the bankruptcy court is possible under § 157(e),[5] it requires the express consent of all the parties which,

---

[4]Section 157(c)(1) states:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1).

[5]Section 157(e) provides:

> If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial

(continued...)

at best, is questionable in this case given that Defendants seek to have the Adversary Proceeding withdrawn from the bankruptcy court. Therefore, given that this action involves a non-core proceeding and the other "cause" factors weigh in favor of withdrawal,[6] the Court **GRANTS** PHH's motion and withdraws the reference pursuant to § 157(d).

### III.
### CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** PHH'S Motion to Withdraw Reference of this Adversary Proceeding and **DIRECTS** the Clerk of this Court to open a new civil action for the Adversary Proceeding. As PHH filed motions to dismiss in the Adversary Proceeding and those motions were not decided pending resolution of the current motion, the Court further **DIRECTS** the Clerk to **TERMINATE** those motions **without prejudice** upon being docketed in the new civil action. If it deems appropriate, PHH may refile those motions.

---

[5](...continued)
        if specially designated to exercise such jurisdiction by
        the district court and with the express consent of all
        the parties.

28 U.S.C. § 157(e).

[6] Although forum shopping is another "cause" factor, the Court finds it is really not an issue in this case and does not weigh in favor of PHH.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to the Honorable Ronald G. Pearson, to the Clerk of the Bankruptcy Court, to counsel of record, and any unrepresented parties.

ENTER: October 14, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE



A TRUE COPY CERTIFIED ON

OCT 14 2010

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia
By_____ Deputy